**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 07-cv-00066-MSK-CBS**

**GREYSTONE CONSTRUCTION, INC.,
PETER J. HAMILTON,
THE BRANAN COMPANY,
CARL K. BRANAN,
MICHAEL C. BRANAN, and
AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**

        **Plaintiffs,**

**v.**

**NATIONAL FIRE & MARINE INSURANCE COMPANY,**

        **Defendant.**

---

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on cross-motions for summary judgment. First, the Plaintiffs, Greystone Construction and Peter J. Hamilton (collectively, Greystone), The Branan Company, Carl K. Branan, and Michael C. Branan (collectively, Branan), and American Family Mutual Insurance Company, filed a Motion for Summary Judgment Re: Duty to Defend Following Remand from the Tenth Circuit **(#183)**, to which the Defendant, National Fire & Marine Insurance Company, Responded **(#188)**, and the Plaintiffs Replied **(#191)**. Second, National Fire filed a Motion for Summary Judgment RE: Coverage under National Fire Policies **(#184)** and an accompanying brief **(#185)**, to which the Plaintiffs Responded **(#189)**, and National Fire Replied **(#190)**.

1

### I. Jurisdiction

The Court exercises jurisdiction under 28 U.S.C. § 1332. The parties agree that Colorado law governs.

### II. Background

This insurance coverage dispute has a somewhat complex history. As discussed more fully below, the dispute stems from National Fire's denial of a defense to its insureds, Greystone and Branan, in state actions alleging construction defects. The underlying actions ultimately settled, but the Plaintiffs here contend that National Fire had a duty to defend in the underlying suits and has a present duty to indemnify them for the settlement payment.

Initially, the Court granted summary judgment in favor of National Fire, *see* Docket #160. Relying on Colorado case law, the Court concluded that the underlying lawsuits asserted claims for construction defects, and thus, they did not fall within the grant of coverage under National Fire's policies. The Tenth Circuit in *Greystone Construction, Inc. v. National Fire & Marine Ins. Co.*, 661 F.3d 1272 (10th Cir. 2011), vacated the judgment, holding that the damage in the underlying suits did not categorically fall outside the grant of coverage provided by National Fire's policies. It remanded for determination of the effect of certain policy exclusions on National Fire's duties to defend and indemnify.

The Plaintiffs now move for summary judgment solely on the question of whether National Fire had a duty to defend in the underlying lawsuits. National Fire moves for summary judgment on all claims.

### III. Material Facts

The parties have stipulated to the following facts:

Greystone and Branan (collectively, the Builders), were both contractors engaged in the construction of residential homes. They each obtained commercial general liability insurance policies from both National Fire and American Family:

- Greystone held insurance policies with American Family from April 18, 2001 to April 18, 2003. It held insurance policies with National Fire from April 18, 2003 to April 23, 2006.

- Branan held insurance policies with American Family from August 12, 1998 to June 20, 2003. It held insurance policies with National fire from June 20, 2003 to June 20, 2005.

Each of the Builders was sued for construction defects in homes it built. The first of the underlying lawsuits concerned a residence built by Greystone that was purchased by Richard and Lisa Hull in 2001. The Hulls sued Greystone in 2005, alleging that Greystone failed to recognize defects in the soil upon which the house was built, and that portions of the house were not adequately designed for such circumstances. Greystone sought defense and indemnification against the suit from both American Family and National Fire. American Family provided a defense, but National Fire refused to do so. The lawsuit ultimately settled for $307,500, paid by American Family.

The second of the underlying lawsuits concerned a home built by Branan and purchased by Douglas and Sandra Giorgetta in 1999. In 2006, the Giorgettas sued Branan, alleging damage similar to that alleged by the Hulls against Greystone. Like Greystone, Branan notified both American Family and National Fire of the suit. American Family tendered a defense, but National Fire refused. That lawsuit ultimately settled by Branan buying back the Giorgetta residence for $565,000. Those funds to effect that settlement were provided American Family.

In their Complaint **(#1)**, the Plaintiffs assert claims for: (1) declaratory relief, in that National Fire had a duty to defend both Greystone and Branan on a pro rata basis with American Family, (2) contribution/equitable subrogation by American Family for the amounts paid in defense and settlement of the Hull and Giorgetta lawsuits, (3) breach of contract, (4) bad faith breach of contract, and (5) violation of the Colorado Consumer Protection Act.

### IV. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## V. Analysis

### A. Duty to Defend

Both parties seek summary judgment on the issue of duty to defend. Generally, the Court separately considers cross-motions for summary judgment, but as to that issue, the parties agree on the underlying material facts. As to that issue, the Court can resolve the claim on summary judgment by applying the relevant law to the undisputed facts. Fed. R. Civ. P. 56(a). As to other issues, the Court considers the motions separately.

Under Colorado law, an insurance policy is construed according to principles of contract interpretation. *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 502 (Colo. 2004). The policy's language must be given the plain meaning of the words used, unless there is an indication by the parties of a mutual intent that an idiosyncratic meaning would apply. The policy is viewed as a

whole, giving effect to all provisions. Because of the "unique nature of insurance contracts and the relationship between the insurer and insured," ambiguous provisions are construed against the insurer and in favor of providing coverage to the insured. *Cyrus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). For the same reasons, coverage exclusions are construed against the insurer. *Worsham Constr. Co. v. Reliance Ins. Co.*, 687 P.2d 988, 990 (Colo. App. 1984). Exclusions must be drafted in clear and specific language. "To benefit from an exclusionary provision in a particular contract of insurance, the insurer must establish that the exemption claimed applies in the particular case and that the exclusions are not subject to any other reasonable interpretations." *Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991).

In Colorado, the duty of an insurer to defend its insured is distinct from its duty to indemnify the insured. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613-14 (Colo. 1999). The duty to defend is the "insurance company's duty to affirmatively defend its insured against pending claims." *Constitution Assoc. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996). When an insurer refuses to defend in an underlying suit, and the insured brings an action for defense costs, the duty to defend is determined by application of the complaint rule. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 828 (Colo. 2004). Under this rule, a duty to defend arises when the underlying complaint alleges any facts that might fall within the coverage of the policy. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991). The insured's actual liability is not considered. Instead, the duty to defend arises where the allegations in the complaint, if sustained, would impose a liability covered by the policy. "Where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy

coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1284 (10th Cir. 2011) (quoting *Compass Ins. Co.*, 984 P.2d at 613-14).

The insured need only show that the claim alleged in the underlying complaint <u>could</u> fall within policy coverage; the insurer must prove that it <u>could not</u>. *Compass Ins. Co.*, 984 P.2d at 614. An insurer seeking to avoid its duty to defend an insured bears a heavy burden. It is not excused from its duty unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured. *Hecla*, 811 P.2d at 1089-90.

In determining the duty to defend, National Fire urges the Court to consider facts beyond those contained in the underlying complaints. The Court declines to do so. First, it notes that the Colorado Supreme Court has repeatedly held that to determine whether a duty to defend exists, courts must look no further than the four corners of the underlying complaint. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d at 299. Second, it finds National Fire's reliance on *Pompa v. American Family Mutual Ins. Co.*, 520 F.3d 1139 (10th Cir. 2008), misplaced. In *Pompa*, the Tenth Circuit predicted that the Colorado Supreme Court would recognize a narrow exception to the "complaint rule" if an insured's complaint contains allegations made in bad faith. That is not the circumstance presented here.

The Court now turns to the issue of whether National Fire had a duty to defend in the underlying suits. The parties do not dispute the existence of the underlying complaints in the Hull and Giorgetta lawsuits, nor do they dispute the existence of or language contained in National Fire's policies with Greystone and Branan.

The Plaintiffs assert that the underlying complaints allege claims that fall within the coverage of National Fire's policies. In light of the Tenth Circuit's holding that at least some of the damage alleged in the Hull and Giorgetta lawsuits may fall within the general grant of coverage in National Fire's policy, National Fire must show either that 1) the claims stated in the underlying complaints reflect damage that is subject to exclusions from coverage; or 2) the policies limited or excused National Fire's duty to defend. National Fire makes both arguments.

### 1.  Endorsements that limit coverage

National Fire points to two policy endorsements which it contends limit coverage, and therefore prevent a duty to defend from arising.

First, National Fire relies on Endorsement M 5095, which it contends is applicable to both underlying suits. That endorsement precludes coverage for damage arising out of work done by sub-contractors, unless certain criteria are met. Endorsement M 5095 states that:

> This insurance does not apply to . . . "property damage" . . . arising out of operations performed for you by independent contractors or sub-contractors unless:
>
> (1) Such independent contractors or sub-contractors agree in writing to defend, indemnify, and hold harmless you and your affiliates, . . . from and against all claims, damages, losses, and expenses attributable to, resulting from, or arising out of the independent contractor's or sub-contractor's operations performed for you, . . . ; and
>
> (2) Such independent contractors or sub-contractors carry insurance with coverage and limits of liability equal to or greater than those carried by you, including commercial general liability, workers' compensation and employers' liability insurance; and
>
> (3) Such commercial general liability insurance provides coverage for the independent contractors' or sub-contractors' indemnity obligations set forth in paragraph (1) above; and

> (4) Such commercial general liability insurance names you
> as an additional insured . . . .

National Fire argues that the underlying complaints allege that the damage arose from work done by sub-contractors, and Greystone's and Branan's sub-contractors did not comply with the four-part exception that would permit coverage.

The Court rejects this argument because National Fire relies on facts outside the complaints to argue that Greystone and Branan did not comply with the four-part exception. The underlying complaints allege that "a part of the construction" of the residences was delegated to sub-contractors. However, the complaints contain no allegations regarding what "part" of the construction was delegated or what portion of the alleged damage arose out of work performed by sub-contractors. The complaints also fail to state allegations regarding whether the Builders' sub-contractors did or did not satisfy the four-part exception that would allow coverage. In the absence of allegations on the face of the underlying complaints that the sub-contractors clearly did *not* satisfy the exception, it is at least arguable or possible that, in fact, they did. For the foregoing reasons, National Fire cannot rely on Endorsement M 5095 to extinguish National Fire's duty to defend.

National Fire also relies on Endorsement M 5076, at least with regard to the Giorgetta lawsuit. Endorsement M 5076 precludes property damage that occurs, incepts, or first manifests itself before the start of the policy period:

> This insurance does not apply to any "property damage" . . .
> caused by an "occurrence", if any such "property damage" . . .
> "commences" in whole or in part prior to the first day of the policy
> period of this Policy. This exclusion applies even if the "property
> damage" . . . continues, is alleged to continue, or is deemed to
> continue during the policy period of this Policy.
>
> All exposure to a certain condition or related conditions and all
> damages involving or arising out of the same product, category of

9

> products, completed operation, job site, act or event, regardless of the frequency or repetition of those conditions or damages or the number of claimants shall be considered a single "occurrence."
>
> For purposes of this Endorsement only, "commences" shall mean: (i) first occurs, is alleged to first occur or is deemed to first occur; or (ii) incepts, is alleged to incept or is deemed to incept or (iii) first manifests, is alleged to first manifest, or is deemed to have first manifested. "Commences" is the earliest point in time of (i), (ii) or (ii).

National Fire argues that it had no duty to defend in the Giorgetta lawsuit because the alleged damage occurred prior to the start of its policy with Branan. National Fire points out that its policy with Branan was not effective until 2003, but that the loss notice that Branan submitted to it contained expert reports that showed that by July 2000, the home had experienced some damage. This argument is unpersuasive because, again, National Fire relies on facts outside the complaint. The underlying complaint in the Giorgetta lawsuit does not allege when the property damage occurred or was first noticed. Given the absence of an allegation to show that all the alleged damage clearly fell outside of National Fire's coverage period, it is arguable or at least possible that the damage occurred during the policy period. Thus, this provision does not excuse National Fire's duty to defend.

For the foregoing reasons, the Court finds that there was no limitation in coverage that affected National Fire's duty to defend.

### 2. **Limits on duty to defend.**

National Fire also contends that three policy endorsements expressly eliminated or limited its duty to defend in the underlying cases. The Court applies traditional principles of insurance contract interpretation.

*1. Endorsement M 4685 – Other Insurance Endorsement*

National Fire argues that the "Other Insurance" Endorsement specifies that its policy is "excess" over American Family's primary coverage, and per the plain language of the endorsement, National Fire had no duty to defend in the underlying suits. In pertinent part, Endorsement M 4686 states that:

> If other valid and collectible insurance is available to the insured for a loss we cover . . . our obligations are limited as follows:
>
>> This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, or on any other basis; . . . .
>>
>> When this insurance is excess, we will have no duty . . . to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." . . . .
>>
>> When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
>>
>>> (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
>>>
>>> (2) The total of all deductible and self-insured amounts under all that other insurance.

The Court finds that National Fire cannot rely on this endorsement to deny its duty to defend. The endorsement indicates that it applies in situations where "other valid and collectible insurance is available to the insured for a loss [National Fire] cover[s] . . . ." Because National Fire's policies cover only those losses that occur during its policy period, the endorsement applies only where other insurance purports to cover the same losses that occurred during the same time period. It is undisputed that the National Fire policies did not overlap with any other

11

insurer's policy.  Thus, by the plain language of the endorsement, it does not apply to limit National Fire's duty to defend here.

  2. *Endorsement M 5076 – Exclusion of Damages Commencing Prior to Policy Period*

National Fire also argues that is had no duty to defend because the last paragraph of Endorsement M 5076 precludes coverage for the damages sought in the underlying suits.  The last paragraph of Endorsement M 5076 purports to preclude coverage for damages sought against the insured if the insured requests a defense under an earlier issued insurance policy.  It states:

> If any insured requests an insurance company, including us, to defend, pay or indemnify any amount or otherwise respond to any claim or "suit" under any insurance policy incepting prior to the first day of the policy period of this Policy, this Policy shall not apply to damages sought in that claim or "suit".  The previous sentence does not apply to the request for defense, payment or indemnification of any claim or "suit" to any insurance carrier with regard to a policy which is specifically written to be excess of this Policy.

National Fire argues that because Greystone and Branan requested that American Family defend them under their earlier insurance policies, M 5076 provides no coverage for the damages sought in those suits (and, accordingly, that it does not have a duty to defend).

The Court finds this paragraph of Endorsement M 5076, as written, is unenforceable as a matter of public policy.  Operation of the endorsement essentially nullifies an insured's coverage if the insured complies with its obligations and asserts its rights under any earlier policy.  When, as here, the insured does not have overlapping coverage, and National Fire disclaims coverage under this endorsement, the insured is left without any coverage for damages that may have occurred during a period of time when it believed it had coverage.  Moreover, under the language of the endorsement, this situation arises upon a simple "request" by the insured, and thus coverage is denied even if the other insurer denies the request.  Here, if National Fire is

permitted to deny coverage by operation of this endorsement, Greystone and Branan would potentially be left without coverage for damages that were alleged to have occurred during the National Fire policy periods. Denying coverage by operation of this endorsement runs contrary to the Builders' reasonable expectation of coverage during the time contracted for. Thus, the Court concludes that National Fire cannot deny coverage, or its duty to defend, by relying on the last paragraph of Endorsement M 5076.

   3. *Endorsement M 5077 – Election of Insurance Carrier for Defense*

Finally, National Fire argues that it had no duty to defend in the underlying suits based on the language in Endorsement M 5077. In relevant part, Endorsement M 5077 requires the insured to elect which insurance company it would like to provide its defense. If the insured requests another insurance company to provide the defense, then National Fire has the "option," but not "the duty," to defend the suit:

> If any insured believes that more than one insurance company may have the duty to defend a "suit"[1] for which coverage is provided under this Policy, that insured must elect in writing either to request us to defend the insured or to request one or more other insurance companies to defend the insured with regard to that "suit".
>
> We have the option, but not the duty, to defend any "suit" if any insured has requested another insurance company or companies to defend the "suit" in whole or in part, regardless of whether such request has been accepted or accepted under a reservation of rights. We may request the insured to warrant that it has not requested and will not request another insurance company to defend the "suit" in whole or in part as a condition precedent to our defending the "suit."
>
> . . . .

---

[1] The policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."

13

National Fire argues that because both Greystone and Branan requested that American Family defend their suits, National Fire did not have the duty to defend.

The Court finds that National Fire cannot deny its duty to defend by relying on this endorsement. Similar to Endorsement M 5076 discussed above, this endorsement operates to deny a benefit conferred by National Fire's policies solely on the basis of the insured having "requested" that another insurer defend its suit. The endorsement plainly states that it operates "regardless of whether such request has been accepted or accepted under a reservation of rights." In the situation where there is no overlap in insurance coverage, the insured would be left without a defense if its request to the other insured is denied. Thus, the Court finds that operation of this endorsement runs contrary to the insured's expectation that it would be provided with a defense under the terms of National Fire's policies, and concludes that it is unenforceable.

In sum, the Court finds that National Fire has not established that the allegations in the underlying complaints clearly fall outside of coverage under the policy. Nor has National Fire succeeded in arguing that certain endorsements operate to limit or eliminate its duty to defend. The Court therefore concludes that National Fire had a duty to defend Greystone and Branan in the Hull and Girogetta lawsuits, and summary judgment in favor of the Plaintiffs is appropriate on that issue. The Plaintiffs Motion for Summary Judgment is therefore **GRANTED, as to duty to defend.**

### B. Duty to Indemnify

The Court understands the Plaintiffs to be asserting a claim of equitable subrogation or contribution as to the costs of the underlying settlements. Plaintiffs' success on that claim, as

well as others, turns on whether National Fire had a duty to indemnify Greystone and Branan under the terms of its policies. National Fire seeks summary judgment on this issue.

Unlike the duty to defend, the duty to indemnify relates to the insurer's duty to satisfy a judgment entered against the insured. Because the duty to defend encompasses all possible permutations of claims that could be raised by the facts alleged in the underlying complaint, but the duty to indemnify relates only to the actual liability imposed, the Colorado Supreme Court has held that the duty to defend is a broader concept than the duty to indemnify. *See Cyprus Amax*, 74 P.3d at 299. The duty to indemnify arises only when the policy actually covers the harm for which a judgment (or settlement) is imposed. In order to avoid policy coverage, an insurer must establish that the exemption claimed applies in a particular case, and that the exclusions are not subject to any other reasonable interpretations. *Hecla*, 811 P.2d at 1089. Typically, the duty to indemnify cannot be determined until the resolution of the underlying claims because determination of whether coverage is required is a question of fact. *See Cyprus Amax*, 74 P.3d at 301.

Here, both underlying suits were settled without any judicial findings, making it more difficult to ascertain the actual facts of the Hulls' and Giorgetta's injuries. In such circumstances, unless the nature and extent of the homeowners' injuries are undisputed, this Court is essentially required to undertake the very trial that the parties settled the underlying actions in an attempt to avoid. Once the actual underlying facts of the homeowners' injuries are ascertained, the Court can then apply the policy language to determine whether a duty to indemnify exists.

National Fire relies on four policy exclusions, some of which were discussed above, to argue that coverage for the damage alleged in the underlying suits is precluded. The Court finds

that summary judgment is inappropriate on the indemnification issue because the underlying material facts of the homeowners' injuries are disputed. Thus, the Court is not in a position to properly apply the exclusions.

First, National Fire relies on Endorsement M 5095 to argue that it had no duty to indemnify its insureds. It argues that because all of the construction on the Hull and Giorgetta residence was performed by sub-contractors, there is no coverage for the resulting damage. The Court finds that National Fire has not established that this exclusion necessarily applies. It is true that it is undisputed that all of the work done on the residences was performed by sub-contractors. However, National Fire has not provided any evidence to establish that all of the alleged damage "arose out of" that work. (It may be, for example, that the injury was the result of poor site selection by Brannan and Greystone, notwithstanding flawless work by subcontractors.) Moreover, as the Plaintiffs point out, M 5095 excludes coverage for damage resulting from "operations performed for [Brannan and Greystone] by" subcontractors, but the grant of coverage encompasses "[Brannan and Greystone's] work," which it defines as "work or operations performed by you or on your behalf." Thus, the policy contemplates some substantive difference between "work" performed by subcontractors and "operations" on Brannan and Greystone's behalf performed by subcontractors. Without any clear articulation in the policy as to what acts constitute "work" by subcontractors (which is apparently covered by the grant of coverage) and "operations" by subcontractors (which are excluded from coverage by M 5095), the Court is unwilling to grant summary judgment to National Fire on the Plaintiffs' duty to indemnify claims on the strength of M 5095's language. At a minimum, that determination can be made following a conclusive determination as to precisely what the damage was and what caused it.

Next, National Fire contends that the Subsidence Exclusion, Endorsement 5059(a), precludes coverage in this case because there is no genuine dispute of fact that the "vast majority" of the property damage was caused by earth movement. The Subsidence Exclusion states:

> In consideration of the premium charged, it is understood and agreed that this policy does not apply to any "bodily injury", "property damage" or "personal advertising injury" arising out of, resulting from, caused, aggravated or contributed to, directly or indirectly by the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, or any other movement of land or earth.

National Fire points to the opinions of two expert witnesses who opined that the "majority" of the damage that occurred at the Hull and Giorgetta residences was the result of soil movement. However, National Fire's expert, Ali K. Marvi, also opined that the damage at the residences could fall into five probable causes: (1) soil movement, (2) conditions present at the time of construction, (3) errors in the original design of the home, (4) defects created due to normal shrinkage of construction materials, or (5) surface drainage conditions created by homeowner landscaping. Thus, according to National Fire's own witness, at least some of the alleged damage may have been caused by something other than soil movement. Without knowing what damage actually occurred and what caused it, the Court cannot conclude that this exclusion applies to preclude coverage for <u>all</u> the alleged damage.

Third, National Fire relies on the Exterior Insulation and Finish Systems (EIFS) Exclusion to deny its duty to indemnity in the Hull lawsuit. The EIFS exclusion precludes coverage for any damage arising out of the installation or repair of any exterior insulation and finish system. National Fire asserts that "some of the property damage" on the Hull residence relates to the installation and repair of the exterior stucco of the residence. However, National

17

Fire provides no evidence to support its assertion. Thus, it has not established that this exclusion applies to preclude coverage.

Finally, National Fire relies on Endorsement M 5076 to argue that summary judgment is appropriate as to its duty to indemnify in the Giorgetta lawsuit because the alleged damage occurred before inception of its policies. National Fire points to the "loss notice" submitted by Branan to National Fire, which contained expert reports documenting damage that was observed at the Giorgetta residence prior to the inception of National Fire's policy in 2003. National Fire has not, however, provided any evidence establishing that the damage observed later (during National Fire's policy period) was the same as, or continuing from, the damage observed prior to 2003. Thus, the Court finds that National Fire has not established that Endorsement M 5076 operates to preclude coverage for the Giorgetta suit.

In sum, the Court finds that National Fire has not established that any of the endorsements relied upon necessarily precludes coverage in the underlying suits. Those endorsements may ultimately be found to apply once the Court has conclusively resolved the nature, source, and extent of the homeowners' injuries, but that resolution can only occur following a trial. Accordingly, the Court concludes that summary judgment on the issue of the duty to indemnify is inappropriate, and National Fire's Motion for Summary Judgment is **DENIED.**

### C. Remaining Claims

In accordance with the parties' agreement to bifurcate questions of coverage from remaining issues in the case, *see* ( #160), the Court finds that National Fire's motion for summary judgment as to all remaining claims is not ripe for adjudication.

## VI.  Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Summary Judgment Re: Duty to Defend Following Remand from the Tenth Circuit **(#183)** is **GRANTED**.  The Clerk of the Court is directed to enter judgment in favor of the Plaintiffs as to their claim for a declaration that the Defendant had a duty to defend in the Hull and Giorgetta lawsuits.

The Defendant's Motion for Summary Judgment RE: Coverage under National Fire Policies **(#184)** is **DENIED**.

The parties shall begin preparation of a Proposed Pretrial Order and shall jointly contact chambers to promptly schedule a Pretrial Conference.

Dated this 31st day of March, 2013.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge